LAND, J.
Sam Lee and his wife sued for $15,000 damages, in behalf of themselves and their minor daughters, Edith and Belle, aged, respectively, 16 and 14 year's. The cause of action, briefly stated, is that said minors, being white children born of white parents, while passengers on one of defendant’s trains and seated in a coach set apart exclusively for white people, were illegally and wrongfully ordered by the conductor of said train to leave said coach and go into the coach set apart exclusively for negroes, and that on their refusal so to do the said conductor ejected them from said train at a station some eight miles distant from their destination, to the great mortification and humiliation of the petitioners.
The defendant, first excepting that the said Edith and Belle are not the legitimate children of the plaintiff, answered that they were colored persons, and that the conductor, so believing, requested them to leave the white coach and to go into the car reserved for negro passengers, which the said girls did without objection, and that they voluntarily left the train at Ramsey, without being required or requested to do so by the said conductor or any other employs of defendant.
On the prayer of the plaintiffs the ease was first tried before a jury, which failing to agree, a mistrial was entered. Thereupon counsel for plaintiffs waived trial by jury, and by consent the case was tried before the court.
Plaintiffs have appealed from a judgment in favor of the defendant.
The trial judge found as a matter of fact that the two girls were “colored,” or, in other words, of African descent, on the maternal side.
Act No, 111, p. 152, of 1890, requires railway companies to provide equal, but separate, accommodations for the “white and colored races,” and train officers to assign each passenger to the coach or compartment used for the race to which such passenger belongs. The same statute makes it a misdemeanor for any passenger to insist on going into a coach or compartment to which by race he does not belong, and for any train officer to insist on assigning a passenger to a coach or compartment other than the one set aside for the race to which said passenger belongs, and further provides that, should any passenger refuse to occupy the coach or compartment to which he is assigned, the railway officer shall have power to refuse to carry such passenger on his train.
The word “colored,” as used in the statute, is a term specifically applied in the United States to negroes or persons having an admixture of negro blood. See Webster’s Int. Diet. verb. The same word is often applied to black people, Africans or their descendants, mixed or unmixed, and to persons who have any appreciable mixture of African blood. 7 Cye. 400, 401.
One hundred years ago, in the territory of Orleans, the term “persons of color” was used to designate people who were neither white nor black. In Adelle v. Beauregard, 1 Mart. (La.) 184, decided in 1810, the Superior Court said:
“Persons of color may have descended from Indians on both sides, from a white parent, or mulatto parents in possession of freedom.”
In that case the court held that the plaintiff, being a person of color, was presumed to be free, and that in case of blacks the presumption was that they were slaves. During the régime of slavery all free persons of African descent were styled “free people of color” or “free colored persons.” Civ. Codé 1825, arts. 95, 2261; Act No. 308 of 1855. Article 95 of the Code of 1825 interdicted marriage between free persons and slaves, and between free white persons and free people of color. The first restriction fell with *239 the abolition of slavery, and the second was repealed by the Civil Code of 1870.
But by Act No. 54, p. 63, of 1894, marriages between white persons and persons of color were again prohibited.
By Act No. S7 of 1908 concubinage between a person of the Caucasian or white race and a person of the negro or black race was made a felony.
Act No. Ill of 1890 draws a sharp line of distinction, without a margin, between the white and colored races in the matter of separate accommodations on railroad trains. Ever since the first settlement of Louisiana all persons with any appreciable degree of negro blood have been considered as colored; that is to say, as belonging to the African race. Many free persons of color owned slaves and other property. But between that class of people, however light in color, and the whites, the color line was strictly drawn, both socially and politically. The lawmaker never applied the term “colored” to slaves, but since emancipation that term has been used as synonymous with negro. Among slaves the word “negro’-’ or “nigger” was considered as a term of reproach, and they usually spoke of themselves as “colored.” This nomenclature has survived, and has become a popular term, embracing all persons of negro blood.
The plaintiff’s cause of action is based on the allegation that his two daughters are white children born of white parents. The evidence-adduced on the first trial failed to satisfy three-fourths of a jury of the vicinage of the truth of the allegation. The second trial before the court resulted in a judgment that plaintiff’s children were colored persons.
The plaintiff, Sam Lee, is undoubtedly a white man. He was married to Adaline Baham before a justice of the peace in February, 1889. At that time marriages between whites and persons of color were lawful, and it results that, in any -view of the case, the children of such marriage are legitimate.
The solution of the question of color depends on the status of Norah, Nory, or Abraham Baham, the father of Mrs. Lee, who died some 20 or 25 years ago. It is admitted that Norah Baham was of mixed blood, hut whether he was of Indian or African descent is the contested’ issue of fact in the ease.
No useful purpose would be subserved by recapitulating the conflicting evidence adduced on this issue in the court below. Suffice it to say that the finding of the trial judge is sustained by the testimony of a number of witnesses who knew Norah Baham before and after the late Civil War. It is true that there is much counter testimony; but it is not sufficient to justify us in reversing the judgment as clearly erroneous on a pure question of fact.
The petition charges the defendant company with the violation of a penal statute, and the burden of proof was on the plaintiff to establish the essential facts necessary for a recovery of the damages claimed, to wit, that his children belonged to the white race, and were unlawfully assigned to a coach or compartment set apart for colored persons. One who charges another with a culpable breach of duty must prove the fact, though it involves a negative. 1 Hennen’s Digest, pp. 495-497. On the question of race there is no legal presumption either why. The issue was one purely of fact, to be determined not only by evidence of the admixture of negro blood, but by evidence of reputation, of social reception, and of the exercise of the privileges of a white man. White v. Tax Collector, 3 Rich. Law (S. C.) 136.
Judgment affirmed.