[85 So. 1

**SUNSERI v. CASSAGNE.**

No. 34572.

Oct. 31, 1938.

Rehearing Denied Nov. 28, 1938.

James Wilkinson, of New Orleans, for appellant.

Lenfant & Villere and Howard W. Lenfant, all of New Orleans, for appellee.

ROGERS, Justice.

Cyril P. Sunseri and Verna Cassagne were married in the Parish of St. Bernard, Louisiana, on May 13, 1935. After living together for several months a separation took place between the parties. On October 1, 1936, following a prosecution for alimony before the Juvenile Court, Sunseri brought this suit to annul his marriage, on the ground that his wife, Verna Cassagne, is a person of color, having a traceable amount of negro blood. Defendant answered, denying plaintiff's allegations. On the trial of the case a number of witnesses were heard and a number of documents were offered in evidence. After holding the case under advisement for several weeks, the trial judge rendered judgment annulling the marriage between the parties. From that judgment the defendant has appealed.

Article 94 of the Civil Code prohibits the marriage of white persons and persons of color, forbids the celebration of such marriages and declares that such celebration carries with it no effect and is null and void.

The trial judge held that although the defendant has only one-sixteenth of negro blood, her marriage to plaintiff, who is a white man, was null under the codal article, there being nothing in the law permitting the marriage of persons of the white race and persons having only a trace of negro blood.

It is admitted that Fanny Ducre was the great-great grandmother of the defendant. Plaintiff predicates his action for the annulment of his marriage with defendant on the claim that Fanny Ducre was a full-blooded negress. Defendant denies this and contends that Fanny Ducre was an Indian.

The record shows that Fanny Ducre was a slave and that with her three children she was duly emancipated by her owner, Leander Ducre, in the Parish of St. Tammany, on June 18, 1837. According to certain oral testimony in the record, Leander Ducre subsequently made his former slave, Fanny, his wife. Several children were born of the union between Leander Ducre and Fanny Ducre, four of whom were Drauzin Ducre, Toussaint Ducre, Margaret Ducre and Theresa Tucker.

Margaret Ducre married Anatole Cousin, of which marriage Camille Cousin was born. Camille Cousin was married to Joaquin J. Cusachs, by whom she had a number of children. Among the children born of the union of Camille Cousin and Joaquin J. Cusachs was Stella Cusachs, who married Steve Cassagne, and of this marriage the present defendant, Verna Cassagne, was born.

It is not disputed that Leander Ducre, the great-great grandfather, Anatole Cousin,

the great grandfather, and Joaquin J. Cusachs, the grandfather, of Verna Cassagne were white men. Nor is it disputed that Steve Cassagne, the father of Verna Cassagne, is a white man.

Plaintiff relies on the testimony of Drauzin Ducre taken in the case of Drauzin Ducre v. P. M. Milner, No. 4540 of the docket of the Twenty-second Judicial District Court, Parish of St. Tammany, wherein on cross-examination Drauzin Ducre stated that his mother, Fanny Ducre, was a colored woman and that his father was a white man, and that of the marriage of his mother and his father there were born several children including Theresa and Margaret; on the certified copy of a death certificate from the State Board of Health setting forth that Drauzin Ducre was a colored man; and also on the testimony of Cora Ducre taken in her suit against P. M. Milner, No. 5677 of the Twenty-second Judicial District Court, Parish of St. Tammany, wherein she admitted that she had negro blood, was regarded as a mulatto, having an admixture of negro and French blood; that her grandmother was Fanny Ducre and that her father was Toussaint Ducre, a son born of the union between Fanny Ducre and Leander Ducre.

Defendant objected to the offer in evidence of the two suits of Drauzin Ducre and Cora Ducre, on the ground that they were original records of another court and as such could not be offered in the Civil District Court, Parish of Orleans; second, that neither the defendant nor her ancestors were parties to either suit, and the same were res inter alios acta; and, third, that

any declaration made by any witness in those suits was not voluntary but was made on the trial of an issue in the cause and could not be received to prove pedigree. Defendant's objection was overruled and the evidence was admitted and, as shown by his written reasons for judgment, considered by the trial judge.

Plaintiff also relies on the following documents and exhibits, which he offered in evidence, viz.:

The notarial act of emancipation by Leander Ducre of his slave Fanny and her three children, Josephine, Pierre and Lousant, executed on June 18, 1837.

Two notarial acts showing the purchase of certain slaves by Fanny Ducre in the years 1847 and 1857, in the first of which acts, which is drawn in the French language, the purchaser is styled "F.C.L.," meaning "Femme Couleur Libre," and in the second of which acts the purchaser is styled "F.W.C.," meaning "Free Woman of Color."

A notice appearing in the Times-Picayune, a newspaper published in New Orleans, under date of August 20, 1936, relative to the death of Theresa Tucker, together with a death certificate from the Louisiana State Board of Health, setting forth that Theresa Tucker, a negress eighty-five years of age, was killed in an automobile accident on or about that date at a point between Lacombe and Covington, Louisiana; and on certain testimony to the effect that Theresa Tucker was a negro woman or person of the colored race.

A certificate purporting to show a marriage between Toussaint Ducree and Rosa Green, of date July 2, 1887.

A certificate from the office of the Recorder of Births, Marriages and Deaths of the Parish of Orleans, showing the marriage on July 17, 1917, between Camille Cusachs, colored, a native of Lacombe, Louisiana, daughter of Joaquin Cusachs and Camille Cousin, and Albert John Davidson, colored, a native of Biloxi, Mississippi.

A certificate from the same office, showing the marriage of Margot Marie Cusachs, native of St. Tammany Parish, Louisiana, daughter of Joaquin Cusachs and Camille Cousin, and Victor Allard Cousin, a native of Laurel, Mississippi, a son of Allard Cousin and Virginia Duplessis.

An application of James J. Cusachs to the same office on April 17, 1934, for a license to marry Theresa Salvaggio, of Houston, Texas, which was refused because the applicant was a person of the colored race.

And, lastly, a certificate from the same office showing the registry of the birth of Verna Cassagne, the defendant, on July 5, 1917, in the Parish of Orleans, as being the female child of Steven L. Cassagne and Stella Cusachs, a native of Lacombe, Louisiana, the child being registered as colored.

Plaintiff further relies on the testimony of certain witnesses to the effect that the defendant's mother, as well as her maternal ancestors, were regarded as members of the colored race in or about Lacombe, Louisiana, where they resided. On the testimony of an old negro woman named Rose Green

that she was married to Toussaint Ducre; that she was a negro and that his mother, Fanny Ducre, was not an Indian, as contended by defendant, but was a negress. On the testimony of German Green, an old negro, and Mary Cazenave, an aged negress, that they knew Fanny Ducre and that she was a negress and not an Indian. And on the testimony of one Edgar Ducre that he is a son of Drauzin Ducre and that his father was a negro.

Rose Green, who claims that she was married to Toussaint Ducre, the brother of Margaret Ducre, who testified that Toussaint Ducre was a negro, admitted that he looked like a white man. She testified, "He could pass anywhere for a white man and I can prove it because he worked for a white man and went to the St. Charles (Hotel) with him."

In support of her contention that she is not a person of the negro race, as alleged by plaintiff, defendant points out that nowhere in the notarial act of emancipation executed by Leander Ducre in 1839 is Fanny Ducre, defendant's great-great grandmother, described as a negro. Defendant argues that the mere fact Fanny Ducre was a slave, when freed, is not full proof that she was a person of the negro race, as contended by plaintiff.

In the copy of the death certificate of Drauzin Ducre, offered in evidence by plaintiff, the birthplace of his father, Leon (Leander) Ducre, is stated as "Texas," and the birthplace of his mother, Fanny Ducre, as "Sa Domingo."

In Adelle v. Beauregard, 1 Mart., O.S., 183, the Superior Court, in 1810, said:

"Persons of color may have descended from Indians on both sides, from a white parent, or mulatto parents in possession of their freedom. * * * The right of holding them in slavery, if it exists, is in most instances capable of being satisfactorily proved."

The defendant in that case proved that he had brought Adelle, an Indian slave, from the West Indies.

Seville v. Chretien, 5 Mart., O.S., 275, 276, was a case in which the children of an Indian slave-mother brought suit to recover their freedom. Justice Mathews, who wrote the opinion, went exhaustively into the history of Indian slavery in this country. At page 288 of the opinion, the learned author quoted from a history of Santo Domingo, which stated:

"In the beginning of the eighteenth century, * * * there were upwards of three hundred Indian slaves in the French part of St. Domingo.

"In 1730, the governor of Louisiana sent three hundred of the Natchez tribe to·be sold there."

Adelle v. Beauregard was cited with approval in Miller v. Belmonti, 11 Rob. 339, 340, decided in 1840.

As late as Lee v. New Orleans ·Great Northern R. Co., 125 La. 236, 51 .So. 182, this Court quoted the Adelle v. Beauregard Case, stating [page 183]:

"One hundred years ago in the territory of Orleans, the term 'persons of color' was used to designate people who were· neither white nor black. In Adelle v. Beauregard, 1 Mart. [O.S., 183], 184, decided in 1810,

the Superior Court said: 'Persons of color may have descended from Indians on both sides, from a white parent, or mulatto parents in possession of freedom.'"

The record shows that Fanny Ducre was born a slave in 1808, which was two years before Adelle v. Beauregard was decided, and that at the time she was freed by her owner, Leander (León) Ducre, in 1839, she was thirty-one years old.

In support of their contention that Fanny Ducre was an Indian and not a negro, counsel for defendant offers the testimony of C. H. Culberston, a white man, the only witness who remembers the exact time and occasion of seeing Fanny Ducre. He testified that "she was copper-colored and had long straight black hair." This description of Fanny Ducre is concurred in by three old negroes, Mary Parker, Rene Pierre and Altemise Smallwood, each of whom testified, additionally, that Fanny Ducre looked like an Indian. And Germain Green, one of plaintiff's witnesses, testified that he could not remember whether Fanny Ducre's hair was "straight or kinky," but that he knew "she had tolerable fair hair hanging down on her head"; that her hair was long, and that it was black in color.

The fact that the notarial acts under which Fanny Ducre acquired certain slaves, in which she is styled "F.W.C." or "F.C.L.", are persuasive but they are not conclusive that Fanny Ducre was a negress. The terms, "free woman of color" or "femme couleur libre," up to the time of the Civil War, were applied to all persons who were not of the white race. In Lee v. Railroad Company, supra, the fact was

stressed that only since the Civil War has the term "colored" been applied exclusively to persons of the negro race. In that case, at page 239, 51 So. at page 183, the Court said:

"Since emancipation [1863] the term [colored] has been used as synonymous with negro. Among the slaves the word 'negro' or 'nigger' was considered a term of reproach."

Before the Civil War a negro was usually called a negro. The act of purchase by Fanny Ducre in 1857 was of "a slave negro woman Pauline and her child, Philomene, of black complexion." In the act of 1847, a griffe slave, Eliza, was exchanged for another griffe slave named Stilly. Indian slaves were not permitted any greater freedom of contract than negro slaves. The fact that, after she was emancipated, Fanny Ducre was described as a "free woman of color" did not necessarily mean that in 1847 or 1857 she was not of the Indian race.

Margaret Ducre, daughter of Fanny Ducre, the great-great grandmother of defendant, married a white man, Anatole Cousin. The evidence shows that Margaret Ducre Cousin was of fair complexion, with blue eyes and long straight hair. Her daughter, Grace, married C. H. Culberston, a white man. As shown by what purports to be a copy of a marriage certificate issued by a Justice of the Peace, Camille Cousin was married on September 2, 1892, to J. J. Cusachs, a white man.

Defendant's ancestors worshipped among the white Catholics in Lacombe. Her mother, Stella Cusachs, was christened apparently as a white child in the Catholic Church and was educated as a white child in a private school in Lacombe. She was also confirmed as a white child in the Catholic Church. Stella Cusachs was married in New Orleans, on July 15, 1916, to Steve Cassagne, a white man. When about to be delivered of defendant, she went to Charity Hospital and was assigned to a white maternity ward, and on May 8, 1917, according to the certificate of the hospital, she gave birth to a white female child (the defendant). Within thirty days after her birth, defendant was baptised as a white child in Mater Delorosa Catholic Church in New Orleans.

Defendant received her first communion certificate in St. Joseph's Catholic Church, New Orleans, a church for white people. She was educated in the white public schools of New Orleans and was graduated from the Kohn High School, an institution devoted to the education of young girls of the white race. She was elected as a delegate by the Kohn High School to the Red Cross Convention in Washington. Mrs. Stella Cassagne, defendant's mother, is vice-president of the New Orleans Linen Supply Company, a white organization. She is registered as a white Democratic voter and, as such, has participated as a voter in many Democratic primary elections.

In railroad cars, street cars and busses, defendant and her mother ride in the seats reserved for white persons. They attend theatres and patronize hotels and restau-

rants as white persons. Their friends and associates are apparently exclusively of the white race.

▆▆▆▆ Referring to the objection of defendant to the offer of the testimony of Drauzin Ducre, taken in his case against P. M. Milner, we think that irrespective of whether the testimony is inadmissible to prove the color of Fanny Ducre, defendant's great-great grandmother, it can not be considered here because it is not shown that the color of the parties was an issue in the case in which the testimony was given. So far as the testimony of Cora Ducre given in her case against Mr. Milner is concerned, we think the objection is good because Cora Ducre was alive at the time this case was tried and was available as a witness. Hence, her evidence in the former case is clearly secondary and not admissible. Corpus Juris, Vol. 22, page 262.

The death certificate of Drauzin Ducre, issued by Mrs. Emma Villarrubia, who was registrar of births and deaths in Lacombe from 1919 to 1933, classing the deceased as colored, loses its effect when considered in connection with the death certificate of Seymour Cousin, son of Margaret Ducre, sister of Drauzin Ducre, also issued by Mrs. Villarrubia, classing the deceased as white.

Nor can reliance be placed upon the testimony of Rose Green, claiming to be the wife of Toussaint Ducre, in view of the question raised concerning the alleged certificate of her marriage with the said Toussaint Ducre, and in view of the further fact that there is nothing in the record to show that these parties ever lived together as man and wife; that Toussaint Ducre reared, cared for or educated the children of Rose Green, or acknowledged them in any way, or that she or her children ever claimed an interest in the estate of Toussaint Ducre. Furthermore, in the case of Ducre v. Milner, La.App., 140 So. 158; Id., La. App., 146 So. 734, it is indicated that the wife of Toussaint Ducre was one Adelaide Balancier, and that Toussaint Ducre and Adelaide Balancier lived publicly as husband and wife and reared a large family as such.

So far as the testimony of Edgar Ducre is concerned, there is nothing to show, beyond his mere statement, that he is a son of Drauzin Ducre.

▆▆▆ In our discussion of the evidence submitted by the respective parties, we have not considered the effect of the three certificates which were issued by the Recorder of Births and Marriages for the Parish of Orleans, reciting that Verna Cassagne, the defendant, is colored, and that her aunts, Camille Cusachs and Margo Marie Cusachs, and their respective husbands were married as members of the colored race. Apart from these certificates, the evidence, while persuasive, is not conclusive and does not warrant us in holding that defendant is a member of the colored race, particularly in view of the overwhelming testimony that she and her immediate associates have always been regarded as members of the white race and have associated with persons of that race. The recitals of the certificates are presumably correct and, if permitted to stand, will be decisive of the issues involved in this case.

▆▆▆ But the defendant strenuously insists that the recitals of the certificates are not correct and that they are not in ac-

cordance with the true facts. She declares that since the appeal was taken she has discovered certain evidence, which will establish the incorrectness of the records from which the certificates were taken, and she has filed an application to have the case remanded in order that she may have an opportunity of showing the incorrectness of the records and that the parties referred to therein should be designated as white instead of colored to conform to the true facts. We think that defendant should be given an opportunity to do this, since her marriage should not be annulled on the ground that she is a member of the negro race unless all the evidence adduced leaves no room for doubt that such is the case.

For the reasons assigned, the judgment appealed from is annulled, and the case is remanded for further proceedings consistent with the views herein expressed. Plaintiff is to pay the cost of this appeal, all other costs to await the final disposition of this suit.