JANVIER, Judge.
On February 12th, 1946, Grant T. Treadaway, as relator, brought this suit against the Louisiana State Board of Health, praying for the issuance of a writ of mandamus to compel the said Board to change one of its records, that made on November 12th, 1930, showing the registration of the death of the relator’s mother, Anna Treadaway, in which the race of his mother is entered as colored.
Relator seeks to have the record changed so as to show the race of his mother as white.
The Board of Health filed answer denying that relator’s mother was a member of the white race. Thereafter the Board of Health filed a plea of nonjoinder, contending that Grant Treadaway is one of the many children of Anna Treadaway and that, therefore, the other said children are necessary parties, and later still the said Board filed exceptions of no cause of action and no right of action. All of these pleas and exceptions were overruled, and after a trial there was judgment in.favor of relator making peremptory the writ of mandamus and commanding the said Board “to correct its record of the death oi Anna Treadaway, recorded in Ward District .No. 52-5507, File No. 55, registered *344 No. 13543, to show that the said Anna Treadaway is a person of the Caucasian, or white, race.”
The Louisiana State Board of Health prayed for and obtained an appeal to the Supreme Court of Louisiana, and that court has transferred the matter to this court. See State ex rel. Treadaway v. Louisiana State Board of Health, 218 La. 752, 51 So.2d 41.
The relator is the son of Daniel Treada-way and his wife, Anna Lafitte Treada-way. The race of relator’s father, Daniel Treadaway, is not at issue.
We have given considerable thought to the question which is raised by the plea of nonjoinder filed by the respondent. This plea is based on the fact that the relator, as we have stated, is one of several brothers and sisters, children of Anna Lafitte Treadaway and Daniel Treadaway, all of whom will be as much affected by a change in the registration of the race of relator’s mother as will relator.
The question is whether or not in such a case one of the children has a right, without the acquiescence of the others, to demand such a change as relator insists on here. Have the courts the right to assume that all of the children in such a case wish the change to be made? Is it a foregone conclusion that to be classified in all circumstances as a member of the white or Caucasian race is so obviously desirable that the courts must assume that all persons who might be affected by such a judgment as is prayed for here would favor such a judgment?
We-think that the public interest which is involved is paramount, and that in such a case what is most desirable is that the record be correct, and that whenever the attention of the Board of Health is directed by any person at interest to the possible incorrectness of a record and conclusive evidence is produced, the public interest demands that the correction be made regardless of whether or not all persons interested join in the request for the change. This, seems to be recognized in the statute which authorizes the change or alteration of such a record* where there is submitted “sufficient documentary or sworn evidence acceptable as a basis of the alteration.” See LSA-R.S. 40:266. In the cases cited by respondent only private rights were involved. On this question we have, therefore concluded that since the. matter was brought to the-attention of the Board of Health by a person who was affected by the record, the Board of ■ Health is authorized and, in fact, required by the statute to receive such evidence as might be available and, in accordance with its own rules, to make the change if the evidence submitted is found by the court to be satisfactory.
The pleas and exceptions were properly overruled.
The Treadaway family, of which Anna Lafitte Treadaway was the mother and Daniel Treadaway was the father, and of which Grant Treadaway was one of the sons, lived in St. Tammany Parish on the bank of Bayou Lacombe near its mouth where the father, Daniel Treadaway, followed his occupation as trapper, hunter and fisherman, and as caretaker of the navigation light at the‘mouth of Bayou Lacombe.
Both Daniel Treadaway and his wife, Anna, went to St. Tammany Parish from Plaquemines Parish, below New Orleans, and had lived in St. Tammany Parish for many years when, in 1930, the wife, Anna, died and the record, which is under attack, was made.
The children were the relator, Grant, his brothers, William T., Peter Wiley, Joseph and Daniel Treadaway, Jr.
The girls of the family were Anna (known as Darling), who married Louis Cazenave; Mary Lena, who married Joe D’Angelo; Marie, whose husband’s last name was Melina, and Encebelle.
When the mother, Anna Treadaway, died on October 15th, 1930, her death was registered in the records of the Louisiana State Board of Health by the Registrar, E. G. Villarubia, and according to the certificate, the information given to the Registrar came from Joe Treadaway, a brother of the relator, and it is that certif *345 icate, in which the race of the mother, Anna, is entered as colored, which is under •attack.
From that certificate it is made to appear that the parents of the deceased, Anna Treadaway, were Joe Lafitte, the father, and Augustine, the mother. The last name of the mother is not given on the certificate, though it otherwise appears that the full name of the mother was Augustine Casborne.
There is much contradictory evidence -as to whether the deceased mother, Anna, had several brothers and sisters. According to some of the evidence relied on by the Board of Health, the brothers were John Lafitte; Fanny Lafitte, whose husband was Charles Ducre or Dupre; Patrick Lafitte; Benjamine Lafitte, whose husband was Manuel Cryer, and Thompson Lafitte, whose first wife was Victorine Cryer and whose second wife was Lumina Silve.
There is nothing in the record to show the race of any of these persons except Thompson Lafitte, and it is the contention •of the relator that Thompson Lafitte was not a brother of relator’s mother, Anna Lafitte. If Thompson Lafitte was a brother of Anna Lafitte, there are many certificates in the record showing the race of Thompson Lafitte as colored and showing also the race of many of his children as colored. And if Benjamine Lafitte was a member of the family of relator’s mother, there is in the record a certificate showing the race of one of the children of Benjamine Lafitte as colored and showing that the mother of this child, Benjamine Lafitte, was herself colored. This certificate, recording the birth of Levine Cryer, shows her to be the female daughter of Manuel Cryer, the father, and “Ben (Lefitte) Cry-er’’, and it shows the race of the mother “Ben (Lefitte) Cryer”, who was obviously Benjamine Lafitte, as colored.
We find it unnecessary to set forth the details concerning the certificates which appear under the name of Thompson Lafitte and of his several children, because the contention of relator as to them is that they are not related to him, and the contention of the Board of Health is that they are. If they are related to him, then these certificates constitute a tremendous volume of evidence contradictory to the contention of relator and if they are not so related then these certificates should he disregarded.
We also find in the record a certificate showing the birth of “Anestasia Casnave Cazenave”. This child, a girl, is shown on the certificate to be the daughter of Louis Cazenave and Anna Treadaway. And in this certificate the race of the mother, Anna, is. shown as “color”. Anna Tread-away was unquestionably a sister of relator, Grant Treadaway.
There is also in the record a certificate showing the birth of Andrew Cazenave. This male child is shown to be the child of Louis Cazenave and Anna Treadaway, the sister of relator, and the race of the mother of this child is shown as “col”.
Peter Wiley Treadaway, a brother of relator, admittedly married a colored woman named Dupre or Ducre. There are in the record several certificates showing births of children of Peter Wiley Tread-away. As we have said, it is conceded that his wife was colored, but in each of these certificates, of which we find in the record at least three, the race of the father, Peter Wiley Treadaway, is shown as colored. In one of the certificates, in the case of the birth of Leoma, the father’s name is given as Peter Wiley Treadaway. There is an ink line drawn through the middle name “Wiley” and above it is written “Willy.”
There is in the record a Family Office Record Card issued by the Superintendent of Schools of St. Tammany Parish. This certificate lists five children of Daniel Treadaway. On this card there is a blank showing the letters "W" and “N” in which the race should be checked. There is a checkmark after the letter “N”.
Also in the record are certificates showing the birth of two children of this Daniel Treadaway. These two children are Syl-vene Treadaway and Adele Treadaway. Sylvene Treadaway, according to the certificate, is shown to be the daughter of *346 D. James Treadaway and Adele Sylve, the mother. And according to the certificate the race of the father is given as “color”.
The certificate showing the birth of Anc-velle “Treadway” shows her to be the daughter of Daniel J. “Treadway” and Adele Sylve, and according to this certificate the race of the father is given as “col.” D. James Treadaway and Daniel J. Treadaway are one and the same person and that person, according to relator, is his brother.
We also find in the record a certificate showing the death of Encebelle Tread-away, a sister of relator. According to this certificate, this sister, Encebelle, was “col.” The information on this certificate was given by Daniel Treadaway. We cannot tell whether the Daniel Treadaway who gave the information was the brother of Encebelle or the father of Encebelle, but in either event the informant was a blood relative of Encebelle and a blood relative of the relator. In this certificate it is true that the name of the mother of Encebelle is given as Hanna Fitte, whereas relator contends that his mother was Anna Lafitte and not Hanna Fitte.
There are in the record several other certificates showing the deaths of several other Treadaways who lived in that area of Plaquemines Parish from which relator’s father had migrated to St. Tammany Parish, and in practically all of those the race of the various persons named Treadaway was shown as colored. However, we are not concerned with the question of the race of relator’s father, since on his death certificate his name is shown as white, and no effort has been made to change that entry.
It is interesting to note that apparently relator realized that it was absolutely essential that he show that the father of his mother, Anna Lafitte, was not colored. The father was Joe Lafitte and according to the testimony of the relator and some of his witnesses, Joe Lafitte was known as Lunchman Lafitte and was white. There seems to be no doubt that in St. Tammany Parish there was a Lansman Lafitte who, •according to many witnesses produced by the respondent, Board of Health, was colored.
It is interesting also to note that though the race of relator’s father is not at issue, relator took pains to attempt to show that the Thomas Jefferson Treadaway, who was his father’s father and who had lived in Plaquemines Parish for many years, was not the same Thomas Jefferson Treadaway who had also lived in the same locality in Plaquemines Parish and who, according to much evidence in the record, was colored.
There is in the record considerable oral testimony of many witnesses from the Parish of St. Tammany. Among the witnesses we find reputable citizens whose testimony is that they were familiar with the mother and the father of the relator and that they always considered them as white. On the other hand, other reputable citizens testified that they were also familiar with Daniel Treadaway and with his wife, Anna, and that they always considered them as colored.
It is contended on behalf of relator that the question of his race was never raised until his family became involved in politics to some extent and refused to follow the wishes of the local politicians who have now testified that they always thought that relator’s father and mother were colored.
It is contended that the midwife who assisted at the births of several of the children, and who herself was colored, was ignorant and could not read or write and therefore made a mistake in giving the information as to the race. We find, however, that in many instances the information according to the certificates was given by relatives of the relator and that the certificates were not based solely on the information given by the midwife.
The record shows that the relator was called into military service during the Second World War and that he was. registered as white; that he served with white companions all through the war, was wounded, and was assigned to white hospitals. His record seems to have been most creditable.
There are in the record several registration certificates issued in the Parish of St. *347 Tammany showing the registration of Grant Trcadaway as a voter in the Parish of St. Tammany, and it is contended that these could not have been issued had he not been white.
It must be conceded, of course, that there is always the possibility that error may have been made, and it is of paramount importance, particularly in matters of this kind, that such errors be corrected.
Our attention is directed to the opinion of the Supreme Court in Sunseri v. Cas-sagne, 191 La. 209, 185 So. 1, in which the registrar, who registered the death shown on the certificate in this case, was the same registrar whose entries were under attack in that case. In the Sunseri case the Supreme Court ordered the matter remanded for further evidence touching upon the correctness or incorrectness of those entries. When the matter again came before the Supreme Court, that Court approved the action of the district court in admitting evidence to show that the original entries should have shown the race of the persons involved as colored. See Sunseri v. Cassagne, 195 La. 19, 196 So. 7.
We note a spirited dispute between counsel as to the admissibility in evidence in this case of the entire record in another case which had been filed in the district court for the Parish of St. Tammany and voluntarily discontinued. In that case there was at issue the question of the race of a brother of relator. The respondent Board of Health contends that if that record is considered it must be accepted as strong evidence against relator.
We have more than considerable doubt as to the admissibility of this record, and the conclusions which we have reached have been arrived at without considering any portion of it.
We see no necessity of discussing the question further. We have diligently endeavored to take into consideration all of the admissible evidence in this record, and wc find ourselves completely unable to reach any other conclusion than that the registration of the death of Anna Lafitte Treadaway was correct.
Accordingly the judgment appealed from is annulled, avoided and reversed and the suit of relator is dismissed at his cost.
Reversed.