138 So.2d 829 (1962)
STATE ex rel. Taylor COUSIN
v.
LOUISIANA STATE BOARD OF HEALTH, through Its President Dr. W. J. REIN.
No. 458.
Court of Appeal of Louisiana, Fourth Circuit.
March 12, 1962.
Rehearing Denied April 2, 1962.
Certiorari Granted May 18, 1962.
*830 Philip C. Ciaccio and Ingard O. Johannesen, New Orleans, for respondent and appellant.
Sam Monk Zelden and Max Zelden, New Orleans, for relator and appellee.
Before McBRIDE, YARRUT, SAMUEL, JOHNSON and HALL, JJ.
McBRIDE, Judge.
This is a suit brought by Taylor Cousin, relator who was born October 18, 1906, in St. Tammany Parish, for a mandamus against Louisiana State Board of Health (1) to compel respondent to issue to him a delayed birth certificate showing him to be a member of the white race, and (2) to compel respondent to correct the certificate of Beatrice Cousin, relator's sister, No. 830, showing her birth on September 18, 1911, to evidence the fact that she is a member of the white race.
The petition alleges among other things, that relator (also his sister Beatrice Cousin) is the child of Taylor Cousin, Sr., and his wife, America Marie Cousin; that he is a member of the white race as were his father and mother, but that Louisiana State Board of Health refuses to issue to him a delayed birth certificate showing this; and, that the certificate (described above) issued by respondent to Beatrice Cousin (wife of Manuel Bonnecarre) erroneously states that Beatrice Cousin, as well as her father and mother, belong to the colored race.
The lower court issued an alternative writ of mandamus as prayed for returnable on the day and hour as was fixed by the court.
Louisiana State Board of Health answered the petition denying all of the allegations made by relator.
The matter proceeded to trial on the return day and on May 11, 1961, there was judgment in favor of relator making the alternative writ of mandamus peremptory, and respondent was commanded to issue *831 to relator the delayed birth certificate he seeks showing that he and his father and mother are white. The respondent was also commanded to correct birth certificate No. 820 in the name of Beatrice Cousin, the daughter of Taylor Cousin, Sr., and America Marie Cousin, showing her birth as of September 18, 1911, to evidence the fact that Beatrice Cousin is a member of the Caucasian race.
Within fifteen days of the rendition of the judgment, a devolutive appeal was taken on behalf of the Louisiana State Board of Health.
At this juncture let us state that there is no right or interest in relator, Taylor Cousin, to demand the change in the registration of the birth of his sister, Beatrice Cousin. She is not made a party to this suit; she filed no intervention or made other pleas, nor did she appear as a witness, and, for all we know she might be content to have the registration of her birth remain exactly as it is. Relator may not champion any right she may have to seek a change therein. The failure to disclose a cause of action or a right or interest in the plaintiff to institute the suit may be noticed by either the trial or appellate court of its own motion. LSA-C.C.P. art. 927.
Relator, his wife, and their children and relator's ancestors are natives of St. Tammany Parish, Louisiana, particularly of the village of Lacombe. Sometimes the family name is spelled "Cousin" and sometimes it appears as "Cousins," and these names are interchangeably used. Undoubtedly there was intermarriage in the family for the maiden name of relator's grandmother, mother, and his wife appears as "Cousin" or "Cousins." The dispute as to what is relator's race revolves itself around his ancestors on the maternal side. Relator only traces his family back to his maternal grandparents. The maternal grandparents are Nemour Cousin and Eugenia Cousins, and there is no evidence showing that their births were ever recorded. In the death certificate of Nemour Cousin he was stated to be white, and the death certificate of Eugenia Cousins shows her color or race to be white. From the union of Nemour Cousin and Eugenia Cousins five children were born, one of whom was America Marie Cousin, relator's mother, and William Peter Cousins, Neymour Cousin, Arnaud Lee Cousins and Luke Cousins. Only two of the five children of Nemour Cousin and Eugenia Cousins have birth certificates, viz.: William Peter Cousins and Neymour Cousin. The birth of William Peter Cousins had been recorded in the Health Department in New Orleans in 1899, and his race was originally stated as colored. However, by judgment rendered in the proceedings entitled: State of Louisiana ex rel. William Peter Cousins v. City of New Orleans, No. 313,298 of the docket of the Civil District Court for the Parish of Orleans a mandamus was issued directing the City of New Orleans to change the records so as to show the race of William Peter Cousins to be white instead of colored. Neymour Cousin's birth certificate shows him to be colored. Death certificates list Arnaud Lee Cousins and Luke Cousins as white, while the death certificate of America Marie Cousin shows her as "creole."
America Marie Cousin married Taylor Cousin, Sr., and from this union five children were born, namely, Taylor Cousin, relator, Mae Cousin, Collie Cousin, Beatrice Cousin (wife of Manuel Bonnecarre) and Inez Cousin (wife of Charles J. Riviere). None of the children of Taylor Cousin, Sr., and America Marie Cousin have birth certificates except Beatrice Cousin Bonnecarre, who has a certificate which shows her to be colored. Inez Cousin Riviere's death certificate shows her race as white.
The wife of Taylor Cousin, relator, is Beverly Louise Cousins, who is said to be a white woman. From the registration of her birth in St. Tammany Parish in 1916 it appears that both her mother and father were colored persons. However, by judgment of mandamus rendered in 1960 (forty-four years afterward) in the proceedings *832 entitled: State ex rel. Lena Cousin Charbreck v. State Board of Health, No. 382,748 of the docket of the Civil District Court for the Parish of Orleans, the court ordered the State Board of Health to issue a delayed birth certificate to Lena Cousin Charbreck showing her, and also her father and mother (Joseph P. Cousin and Louise Duplantis Cousin), to be white persons. Lena Cousin Charbreck is the sister of relator's wife, Beverly Louise Cousins.
No appeals were taken from the judgments in the proceedings State of Louisiana ex rel. William Peter Cousins v. City of New Orleans, and State ex rel. Lena Cousin Charbreck v. State Board of Health. The evidence adduced at the trials is not included in the records and said cases have the indicia of being merely pro forma.
Of the union between Taylor Cousin, relator, and Beverly Louise Cousins eight children were born, namely, Roger Cousin, Arlette Mary Cousins, Constant John Cousin, Barry Cousins, Larry Cousins, Beverly Louise Cousin, Sandra Ann Hope Cousins and Jane Francis Cousin. The children of Taylor Cousin and Beverly Louise Cousins who have birth certificates are: Arlette Mary, Constant John, Barry, Larry and Sandra Ann Hope. The births of the other three children are not recorded. It is interesting to note here that the birth of the child Beverly Louise Cousin, born April 19, 1942, was registered in the Parish of St. Tammany, and the certificate contains blank spaces in which the color or race of the father and mother should have been inserted. In these blank spaces appears (drawn by hand) a star (*). This seems very odd in view of the fact that Beverly Louise Cousins, the mother, was the informant. We have cause to wonder why the mother did not see to it that the certificate set forth her race or color and that of her husband, and we also wonder why in the blank spaces provided for the race or color the stars appear.
Louisiana State Board of Health strenuously disputes the contention that relator is a member of the white race. The argument is made that he has a traceable amount of Negro blood (a 1/16th) which results from the fact that his maternal great-great-grandmother was Fanny Ducre, an emancipated slave and a full-blooded Negress. The contention is made that Fanny Ducre was also the great-great-grandmother of Verna Cassagne, who was the defendant in the proceedings entitled: Cyril P. Sunseri v. Verna Cassagne, No. 219-150 of the docket of the Civil District Court for the Parish of Orleans, which case was before the Supreme Court on two occasions. See Sunseri v. Cassagne, 191 La. 209, 185 So. 1, and 195 La. 19, 196 So. 7. Verna Cassagne was declared to be colored and her marriage with Cyril P. Sunseri was annulled on that account. The respondent argues that Fanny Ducre had a daughter named Margaret Ducre, who married Anatole Cousin, of which union Eugenia Cousins (Taylor Cousin's grandmother) and Camille Cousin (Verna Cassagne's grandmother) were born, thus making Fanny Ducre the common ancestor of Taylor Cousin and Verna Cassagne.
Taylor Cousin remembers his grandmother, Eugenia Cousins, and states that he visited her and that she visited him frequently, but he declares he knows nothing about any of her ascending or collateral relatives. He knows his grandmother, Eugenia Cousins, had a sister, but does not remember her name. Relator denied he ever heard of an Anatole Cousin whom the Louisiana State Board of Health claims is his great-grandfather. There is no doubt that respondent is correct in its contention that Anatole Cousin is relator's great-grandfather because the certificate of death of Eugenia Cousins (relator's grandmother) shows that said decedent's father was named Anatole Cousins. Said decedent's son, Arnaud L. Cousins, was the informant. The Louisiana State Board of Health maintains that the sister of Eugenia Cousins was Camille Cousin.
I. G. Todd, a man 75 years old, testified as a witness for relator, and while his testimony *833 seems to be somewhat confused, it could be gathered therefrom that Eugenia Cousins, the mother of America Marie Cousin, was a sister of Camille Cousin.
Louisiana State Board of Health attempted to produce and offer in evidence the record in the case of Cyril P. Sunseri v. Verna Cassagne, No. 219-150 of the docket of the Civil District Court for the Parish of Orleans and the exhibits therein, but upon objection by relator's counsel on the ground "he does not see any relevancy to this particular case," the trial judge rejected the offer of said record, to which ruling a bill of exception was reserved on behalf of Louisiana State Board of Health.
Counsel for Louisiana State Board of Health argue before us that the ruling of the trial court by which the offer of the record in the Sunseri-Cassagne case was rejected should be reversed and that we should now receive the record as evidence, consider it, and adjudicate respondent's side of the case on the basis thereof, it being contended that the record will prove beyond doubt that relator, Taylor Cousin, descends from the full-blooded Negro slave Fanny Ducre.
We do not think it necessary to pass on the correctness vel non of the ruling of the trial court, nor is it necessary to resort to the record in Sunseri v. Cassagne to make an adjudication of the instant case.
It is paradoxical that while counsel for the relator strenuously object to the admission of the record of Sunseri v. Cassagne into evidence, they with equal vigor argue that the enunciation of the Supreme Court (191 La. 209, 185 So. 1) in that case to the effect that a person should not be declared a member of the Negro race unless all the evidence adduced leaves no room for doubt that such is the case should be invoked here. In State ex rel. Treadaway v. Louisiana State Board of Health, 56 So.2d 249 (aff. 221 La. 1048, 61 So.2d 735), we interpreted the language used by the Supreme Court in the Sunseri case, alluded to by counsel for relator, as indicating that the proof should be even more convincing than that which is necessary in such cases as must be proved "beyond a reasonable doubt." We felt that the language used by the Supreme Court means that there must be no doubt at all.
Counsel adopt the position that in order to warrant the denial to relator of a delayed certificate of birth as a white person, the Louisiana State Board of Health has the duty of showing beyond any doubt at all that relator is colored. In other words, what relator is contending is that the respondent bears the burden of showing that relator is not a white man. If the argument counsel make were to be deemed valid, then courts must indulge in the presumption that a person who applies for a birth certificate as white is to be considered a member of the white race until such time as the Board of Health produces proof that he is to be classified otherwise.
We think the rule which counsel seek to have invoked here would operate just the other way in this particular case. Here we have before us a man who is applying for a birth certificate as white claiming to be a member of the white race. The Louisiana State Board of Health has strenuously denied that relator is white and has persistently refused to issue such a certificate as the applicant seeks, and this is the dispute which this court is now called upon to resolve.
Whereas relator is claiming a right to classification as a white person and his claim to that distinction is denied, we think the burden clearly rests upon the relator of showing beyond any doubt at all that he is entitled to a certificate showing that he belongs to the white race. The proof that relator adduced is not sufficient in our minds to constitute a showing beyond any doubt at all that he is white and as such entitled to have his birth certificate so state. As pointed out heretofore, relator *834 has not traced his genealogy back beyond his grandparents and has made no attempt to show who were the collateral relatives or ancestors of Eugenia Cousins, his grandmother. The court cannot lose sight of the fact that the registration of birth of relator's uncle, Neymour Cousin, recites he is colored, and that the birth registration of relator's sister, Beatrice Cousin Bonnecarre, states that she is colored. Also, we must remark again that the birth certificate of relator's child, Beverly Louise Cousin, does not state the race of either the mother or father and that in registering this birth relator's wife was the informant.
It is true that relator introduced some evidence showing that he and certain members of his family have been accepted by white persons as being white, and that he attended white public schools, and that the family attended and frequented places which are ordinarily reserved for only white persons.
We do not believe that such proof should control a decision in the present case. We have already stated that an uncle and a sister of relator have birth certificates showing them to be colored and that one of relator's children has a birth certificate which does not show her race at all, although relator's wife attended to having the registration made.
America Marie Cousin, relator's mother, must also come in for discussion. Her death certificate shows her race as "creole," this information having been given by the physician who presumably attended her.
All informed persons in this area and in every area of the United States, and particularly in the South, who are familiar with the term "creole" should know that the term does not to any extent evidence any percentage whatever of Negro blood. We think it well known that when a person is called a "creole," this evidences an absence of any Negro blood, and the word is usually applied to one born of French or Spanish descent or a mixture thereof. In Webster's New Century Dictionary in the definition of the word "creole," the following meaning is applied to it:
"* * * in Louisiana and elsewhere, a person born in the region but of French ancestry: in general, a person born in a place but of foreign ancestry, as distinguished from the aborigines and half breeds * * *."
We direct particular attention to the word "creole" as used to distinguish those who are not of Negro blood as is stated in the above quotation from Webster's New Century Dictionary.
However, we know that among uninformed persons sometimes the word "creole" is incorrectly used to designate a person of partial Negro blood, and we have no doubt at all that in the particular case in which the death of relator's mother was registered as "creole," the word "creole" was used by the registrar to evidence doubt as to her race. Certainly he would not use the word "creole" to designate relator's mother as being white!
After taking into consideration all of the aspects of the present case and having carefully sifted and analyzed them, we feel that the relator has not established beyond any possible doubt that he is a white person, and, in fact, he has not even established such fact by a preponderance of evidence, and we therefore refuse to approve or condone the issuance of a mandamus which would compel the Louisiana State Board of Health to issue to him a birth certificate showing him to be a white man.
We append hereto copy of the chart used by relator's counsel when arguing the case which is said to show relator's ancestry back to his grandparents. The oval marks appearing thereon and the star (*) are ours.
*835 For the reasons above assigned, the judgment appealed from is reversed, and that part of relator's demand seeking a mandamus looking to the correction of the certificate of birth of his sister, Beatrice Cousin Bonnecarre, is dismissed and that portion of relator's demand by which he seeks to mandamus the Louisiana State Board of Health to issue a delayed birth certificate showing his race as white is dismissed as of nonsuit. Relator is to pay all costs of both courts.
Reversed and rendered.