**Bridgette Y. METOYER, Plaintiff,**

v.

**STATE OF KANSAS and the University of Kansas Medical Center, Defendants.**

**Civ. A. No. 93–2294–EEO.**

United States District Court, D. Kansas.

Jan. 13, 1995.

Douglas M. Greenwald, McAnany, Van Cleave & Phillips, P.A., Kansas City, KS, Michael W. Mlinar, Montecito, CA, for Bridgette Y. Metoyer.

Bridgette Y. Metoyer, pro se.

John C. McFadden, Kansas University Medical Center, Kansas City, KS, for University K.U. Medical Center, State of Kan.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, District Judge.

This matter is before the court on defendants' motion for summary judgment (Doc. # 33). For the reasons set forth below, the motion will be granted.

### I. Factual Background

Plaintiff, Bridgette Y. Metoyer, filed this action against her former employer, the University of Kansas Medical Center ("Medical Center") alleging that she was fired because of her Creole national origin in violation of Title VII. The uncontroverted facts are as follows.

Plaintiff was hired by the Medical Center on or about September 17, 1989, as a Service Assistant in the Housekeeping Department in the Division of Facilities Operations. She was terminated by the Medical Center, effective September 7, 1990. Plaintiff was terminated for misappropriation of state property; specifically, for consuming containers of juice intended for patient use only. Plaintiff admits that she consumed the juice and that this was the reason given for her termination.

The Medical Center Facilities Operations Department considers misappropriation of state property a serious infraction which requires stern disciplinary action. This policy is reflected in the Facilities Operations Employee Handbook, a copy of which plaintiff admits she received and read. Plaintiff's termination was consistent with the personnel policies of the Medical Center and was in compliance with the Kansas Civil Services Act, Kan.Stat.Ann. § 75–2949f(d) (1989), which permits a civil service employee to be dismissed for "willful abuse or misappropriation of state funds, materials, property or equipment."

On her application for employment with defendants, which she filed three months before being hired, plaintiff marked the "Black" race/ethnic category and also wrote in "Cerelo." Plaintiff's birth certificate indicates that her biological parents are both of the "Negro" race. Despite plaintiff's designation as Creole on her application, the individuals responsible for the decision to terminate plaintiff state they had no knowledge of plaintiff's Creole ancestry at the time they made the decision to terminate plaintiff's employment. Plaintiff does not allege that she ever specifically informed anyone employed by defendants of her Creole ancestry, other than to so designate on her application. Moreover, plaintiff admitted in her deposition that she does not believe that the administrators and supervisors responsible for the decision to dismiss her, specifically, Leon George, Rick Gulley, Rick Robards, and Frances Redmond, acted to discriminate against her because of her Creole ancestry. In addition, plaintiff admits that prior to filing her complaint with the EEOC, plaintiff discussed with a Mr. Gilliford that she needed to distinguish herself from Sandra Tyler, an African American, and it would be better if she claimed discrimination on the basis of her Creole ancestry.

Plaintiff does not controvert that her misappropriation of state property represented the final incident of misconduct in a significant history of inappropriate behavior and inefficient work performance requiring informal disciplinary counseling on twelve separate occasions and formal counseling on ten separate occasions. In addition, plaintiff does not contest that she was rated "unsatisfactory" on her annual performance evaluation.

Two other employees, Sandra Tyler, an African–American female, and James Twitty, a white male, allegedly misappropriated state property but were not discharged. Plaintiff does not challenge defendants' assertion that the decision not to terminate Tyler was based on her significant length of service without any prior disciplinary counseling and the fact that there was not a clear policy regarding employee misappropriation in the Nursing Services Department where Tyler worked at the time of the alleged infraction. Similarly, plaintiff does not challenge the facts surrounding the defendants' decision to suspend Twitty for five days rather than dismiss him, i.e., that he is mentally retarded and the evidence against him was questionable.

## II. *Discussion.*

■ Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Moya v. United States,* 35 F.3d 501, 502–03 (10th Cir.1994). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

■ The moving party bears the initial burden of showing that there is an absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Hicks v. Watonga,* 942 F.2d 737, 743 (10th Cir. 1991). Essentially, the inquiry as to whether an issue is genuine is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52, 106 S.Ct. at 2512. An issue of fact is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510. This inquiry necessarily implicates the substantive evidentiary standard of proof that would apply at trial. *Id.* at 252, 106 S.Ct. at 2512.

■ Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir. 1990); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th Cir.1991).

■ The nonmoving party may not rest on his pleadings but must set forth specific facts. *Applied Genetics,* 912 F.2d at 1241. "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith,* 853 F.2d 789, 793 (10th Cir.1988). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514. Summary judgment may be granted if the evidence is merely colorable or is not significantly probative. *Id.* at 250–51, 106 S.Ct. at 2511–12. However, in making this determination, "we must view the record in the light most favorable to the parties opposing the motion for summary judgment." *Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.,* 938 F.2d 1105, 1110 (10th Cir.1991).

■ To maintain a Title VII action for employment discrimination based upon allegations of disparate treatment, the court generally applies the analysis established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and refined in *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981): [1]

> First, the plaintiff has the burden of proving by the preponderance of the evidence a *prima facie* case of discrimination. Second, if the plaintiff succeeds . . . , the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered

1. In *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), the Supreme Court adopted a separate analysis for mixed-motive cases where the defendant has acted with both a discriminatory motive and a legitimate motive. The court finds such analysis inapplicable here because plaintiff has failed to introduce any direct evidence of discriminatory motive. *See Ramsey v. City and County of Denver,* 907 F.2d 1004, 1008 (10th Cir.1990).

by the defendant were not his true reasons, but were a pretext for discrimination. *Id.* at 253, 101 S.Ct. at 1093 (citations omitted). The ultimate burden of persuasion of proving intentional discrimination remains at all times with the plaintiff. *Id.*

■ To establish a prima facie case for discriminatory discharge, Metoyer must first establish that she was of a protected national origin. Second, she must show that she was qualified to perform the job from which she was removed. Third, Metoyer must establish that she was discharged under circumstances giving rise to an inference of discrimination. *Id. See also Trujillo v. Grand Junction Regional Ctr.,* 928 F.2d 973, 977 (10th Cir.1991); *Crawford v. Northeastern Oklahoma State Univ.,* 713 F.2d 586, 588 (10th Cir.1983).

Defendants attack the first prong of plaintiff's prima facie case claiming that Creole is not a national origin protected by Title VII and, even if it is, plaintiff cannot show that she is Creole. Defendants rely on language in *State ex rel Cousin v. Louisiana State Bd. of Health,* 138 So.2d 829, 834 (La.App.1962), an old case discussing the plaintiff's right to a birth certificate showing him as "white," to establish that Creole is not a national origin. "The term 'national origin' on its face refers to the country where a person was born or, more broadly, the country from which his or her ancestors came." *Espinoza v. Farah Mfg. Co.,* 414 U.S. 86, 88, 94 S.Ct. 334, 336, 38 L.Ed.2d 287 (1973).

In *Roach v. Dresser Indus. Valve & Instrument Div.,* 494 F.Supp. 215, 218 (W.D.La.1980), the court held that a person of Acadian or "Cajun" descent could maintain a claim for national origin discrimination under Title VII even though Acadia was never an independent nation. Putting the purposes of Title VII above principles of national sovereignty, the court held that "Cajun" refers to a group with definite ancestral ties to persons originating in Acadia and that such persons may be protected under Title VII. *Id.* "By affording coverage under the "national origin" clause of Title VII he is afforded no special privilege. He is given only the same protection as those with English, Spanish, French, Iranian, Czechoslavakian, Portu-

guese, Polish, Mexican, Italian, Irish, et al., ancestors." *Id.*

We recognize that "Cajun" and "Creole" are distinct terms. Webster's Third New International Dictionary 534 (1986) defines "Creole" as follows:

... 1) one of native birth but of European descent ... 2) a white person descended from early French or sometimes Spanish settlers of the southern U.S. esp. in the Gulf states and preserving a characteristic form of French speech and culture 3) a person of mixed French and Negro or Spanish and Negro descent and speaking a dialect of French or Spanish....

Plaintiff offers similar definitions from other sources. Under such a definition, a Creole denotes one of French or Spanish ancestry, which meets the definition of "national origin" given in *Espinoza* by indicating one's country of ancestry. We, therefore, decline defendants' invitation to rule, as a matter of law, that Creole is not a national origin. In addition, in light of later rulings we need not decide this issue.

Defendants next challenge plaintiff's ability to show that she is Creole in light of her birth certificate classifying both her parents as "Negro." We decline to hold as a matter of law that plaintiff is not a Creole. We wholeheartedly agree with the court in *Gilbert v. Babbitt,* Civ. A. No. 92–1124(NHJ), 1993 WL 468465, at * 4 (D.D.C.1993), which, in declining to rule on whether the plaintiff was Hispanic, stated:

Happily, courts today are relieved from the business of determining race or national origin. Title VII and the implementing regulations make clear that the extent to one [sic] which one is or is not a member of a racial or ethnic group is decidedly the wrong question; they are aimed at eliminating "national origin discrimination [,] ... including ... the denial of equal employment opportunity because of an individual's, or his or her ancestor's, place of origin; or because an individual has the physical, cultural or linguistic characteristics of a national origin or group." 29 C.F.R. § 1606.1 (1992) (emphasis added).... [U]nder the flexible McDonnell

Douglas proof scheme, the "membership" requirement of the prima facie case must not be taken too literally in cases where a plaintiff's connection to a national group is in dispute. Title VII must not be used to promote further racial and ethnic categorization.

■ Even assuming plaintiff is Creole and Creole is a protected national origin, summary judgment is proper because plaintiff has failed to show that she was discharged under circumstances giving rise to an inference of discrimination. Plaintiff's sole basis for her claim that she was discriminated against because of her Creole ancestry is that she was treated differently from Tyler and Twitty, who were not discharged for committing acts similar to those for which plaintiff was terminated.

Knowledge by defendants of plaintiff's Creole national origin is critical to establishing that she was terminated under circumstances giving rise to an inference of discrimination. In *Gilbert v. Babbitt*, 1993 WL 468465, at * 4, the court granted summary judgment where defendant presented sworn affidavits of the decision-makers that they were not aware of the plaintiff's ancestry. Similar to *Gilbert*, defendants present the sworn declarations of the decision-makers involved here; specifically, Leon George, the Associate Director of Housekeeping in the Facilities Operations Department, Richard Gulley, Director of Facilities Operations, and Richard Robards, Director of Human Resources. The affidavits demonstrate that none of the individuals involved in the decision to terminate plaintiff's employment were aware of her Creole ancestry at the time.

Plaintiff's only response is that she indicated that she is Creole on her application. Plaintiff apparently seeks to impute knowledge of the contents of her application to those involved in the decision to terminate her employment. However, she does not allege that any of the individuals in question were ever specifically informed of her ancestry. To the contrary, by plaintiff's own admission, none of the people involved in the decision to dismiss her did so because she is Creole. Plaintiff's disclosure of her national origin on her application for employment,

without some evidence of knowledge of that information by the decision-makers in question, will not overcome the sworn declarations presented by the defendant that the persons responsible for dismissing plaintiff were unaware of her national origin. Notably, plaintiff does not take issue with the defendants' assertion that plaintiff's Creole ancestry is not detectable from her physical appearance. In sum, plaintiff has failed to show that she was discharged under circumstances giving rise to an inference of discrimination.

■ Even assuming that Metoyer presents a prima facie case, she fails to produce evidence demonstrating that there is a genuine issue of material fact with respect to whether defendants' nondiscriminatory reason for her termination—misappropriation of state property and poor work performance—were mere pretexts for national origin discrimination. *See Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093–94. Pursuant to *McDonnell Douglas* and *Burdine*, after the defendants present a legitimate, nondiscriminatory reason for their actions, the plaintiff has the opportunity to demonstrate that the reasons offered by the defendants were in fact only pretexts for impermissible discrimination. *McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. at 1825. Plaintiff may meet this burden directly by demonstrating that a discriminatory reason actually motivated the defendants, or indirectly by showing that the defendants' explanation is unworthy of credence. *Id.* Plaintiff Metoyer has done neither. Plaintiff offers no direct evidence of actual motivation.

Metoyer contends that pretext is established by the fact that Tyler and Twitty committed similar acts but were not discharged. As already discussed, plaintiff does not challenge the mitigating factors surrounding the less severe disciplinary action taken with regard to Tyler and Twitty. Unlike Tyler or Twitty, plaintiff's one year work history is replete with disciplinary actions—twenty-two in all. Plaintiff's work performance was rated unsatisfactory at her annual review prior to her termination. Plaintiff admits that she drank the juice. She also admits that she was aware of the employee

**1204**

policy designating misappropriation of state property as a serious infraction. Under the circumstances, the court finds insufficient evidence to establish pretext based on the more favorable disciplinary actions taken against Tyler and Twitty. The less stringent actions were fully justified for legitimate, non-discriminatory reasons. Plaintiff has simply not presented evidence that she was treated differently because of her Creole national origin.

IT IS THEREFORE ORDERED that defendants' motion for summary judgment (Doc. # 33) is granted.