McCALEB, Justice.
 

 Charles Stephen Villa and Josephine Lacoste were married in the Parish of St. Bernard on February 11th, 1939. They established a matrimonial domicile in the city of New Orleans where their son, Charles Stephen Villa, Jr., was born on July 14th, 1941. On January 21st, 1946, Villa filed this suit against his wife to annul the marriage on the ground that she is a Negro.
 
 [1]
 
 He also joined the minor (who is represented by a tutor ad hoc) as a defendant and seeks to disclaim the paternity and legitimacy of his offspring because of the alleged nullity of the marriage.
 

 After a hearing in the court below, there was judgment dismissing plaintiff’s suit. He has appealed.
 

 The demand is founded upon recitals contained in the recordation of the births of plaintiff’s wife and child by Mrs. Catherine Lacoste, mother of the wife and grandmother of the child. A certified copy of the recordation of the birth of the wife reveals that, on January 9th, 1913, Mrs. Catherine Lacoste appeared before the Deputy Recorder of Births, Marriages and
 
 *657
 
 Deaths for the City of New Orleans and declared that a female child named “Josephine Lacoste (colored)” was born to her at her home in New Orleans on November 3rd, 1912. The certificate of recordation of the birth of the child discloses that Mrs. Catherine Lacoste appeared before the said Recorder on July 23rd, 1941 and declared that a male child named “Charles Stephen Villa (col.)” was born on July 14th, 1941 to Josephine Lacoste at Touro Infirmary.
 

 The defense concedes that Mrs. Catherine Lacoste registered her daughter and grandchild as colored. But it is maintained that she did so under the erroneous belief that persons of Filipino extraction are colored, resulting from information, given her at the office of the Recorder of Births, Marriages and Deaths and that, as a matter of fact, neither the defendant wife nor child is colored in the sense that they are Negroes or have any Negro blood in their veins. In support of this contention, numerous witnesses were produced and the District Judge, after hearing them testify, remarked at the close of the case:
 

 “The recordation of two of the persons involved in this suit as colored has been explained to my satisfaction and there is nothing in the evidence to indicate that there was ever any Negro blood in the family of either the plaintiff or the defendant. The only color involved at all is that of the Filipino. While the plaintiff had made out a prima facie case bj introducing the records, the defendant has explained those records with reasonable certainty, * * *.”
 

 Accordingly, the question presented for decision is purely one of fact. The record discloses that the defendant wife is the issue of Leopold (Paul) Lacoste and Catherine Azago. Two other children, Paul and Oliver M. Lacoste, were born of the marriage and were registered as white by a doctor and midwife, respectively. The family has always been considered white; the defendant wife and her brothers attended white schools and have associated exclusively with white people. The father, Leopold Lacoste, is shown to be a Frenchman and this fact is not contested. In substance, the complaint is that the mother, Catherine Azago Lacoste, is a Negro and this is founded on the presumption arising from the fact that she registered her daughter and grandson as colored rather than upon proof that she is a colored woman. But the evidence shows that her mother was Mary Louise Caruso,. a white woman and her father, Manuel Azago, was a Filipino. He, according to the testimony of an old friend, Raymond Cabilash (a Filipino -86 years old), came to this country as a young man from the Phillipine Islands, being a native of llocos
 
 [2]
 
 and a “Blanco Filipino”.
 

 
 *659
 
 Thus, the proof submitted by the defense is ample to overcome the prima facie case, see Section 4 of Act No. 60 of 1914/ Dart’s General Statutes, Section 3478; Sunseri v. Cassagne, 191 La. 209, 185 So. 1, resulting from the designation .of plaintiff’s wife and child as colored upon the records of the office of the Recorder of Births, Marriages and Deaths for the City of New Orleans. But, more than this, the testimony of Mrs. Catherine Lacoste leaves no doubt that the designations are incorrect and that they emanated from her erroneous belief that Filipinos were colored people. She states that she was informed by the Recorder’s office (Mr. Lanauze was Deputy Recorder when the wife’s birth was recorded and Mr. Prudhomme held the position when the child’s birth was recorded) at the time she registered the births that if she was a Filipino the persons should be recorded as “colored”.
 

 Mr. Prudhomme,' the Deputy Recorder, stated that Mr. Lanauze, his predecessor, would always record Filipinos as “colored” and that he would not record them as Filipinos unless they insisted on being registered as white.
 

 Counsel for plaintiff is vehement in his criticism of the evidence submitted by defendants, proclaiming that it is evasive, confusing and contradictory and he argues that the defense has failed to produce sufficient proof to overcome the prima facie case resulting from the erroneous racial designation contained in the birth certificates. And he views disparagingly the testimony of Mrs. Catherine Lacoste, suggesting that she had “strong reasons” for registering her daughter and grandson as colored. ■ *
 

 Our reaction to the testimony of Mrs. Catherine Lacoste is in. direct contrast with that of counsel for plaintiff. She is a simple, uneducated woman (a third grade grammar school education) and we see no reason to question the truth of her explanation that she believed that Filipinos were colored people or that the Deputy Recorder of Births, Marriages and Deaths for the City of New Orleans informed her that such was the case.
 

 The same may be said of the other witnesses produced by the defense. While it is true that there are some inconsistencies in their testimony, they are of a minor nature and have no effect upon their veracity. After all, the judge of the District Court saw them and heard them testify. He believed them and we not only fail to detect error in his conclusion but think it eminently sound.
 

 Since submission for our decision, plaintiff’s counsel has filed a motion to remand the case to the District Court for the purpose of introducing in evidence a certificate showing that Paul Henry Lanauze, the former Deputy Registrar of Births, Marriages and Deaths for the City of New Orleans, died on June 27th, 1940. Counsel states that' he only learned of
 
 *661
 
 the death of Mr. Lanauze since the argument of the case in this court.
 

 We fail to see how proof of the death of Mr. Lanauze in 1940 would affect the result. Indeed, Mr. Prudhomme testified at the trial that Mr. Lanauze was dead and we have no doubt that the District Judge was well aware of this fact.
 

 The judgment appealed from is affirmed.
 

 [1]
 

 Marriages between white persons
 
 and Negroes are forbidden by Article 94 of
 
 the Civil Code and are
 
 subject to impeachment under Article 113.
 

 [2]
 

 llocos, according to the World Atlas, is a northern province of the Island of Luzon.