REGAN, Judge.
Plaintiff, Anthony Leon Francis, filed this suit against the defendant, the Louisiana State Board of Health,[1] endeavoring to obtain a writ of mandamus ordering the defendant to issue a birth certificate revealing his race as Indian.
The defendant answered, and therein merely denied the allegations of the plaintiff’s petition.
From a judgment in favor of the plaintiff, the defendant has prosecuted this appeal.
The record reveals that in 1958 the defendant issued a birth certificate to the plaintiff without objection, which indicated that plaintiff’s race was either white or 'Indian. The plaintiff insists that his race was designated thereon as white, while the defendant asserts that he was registered as an Indian. In any event, it is undisputed that in 1961 a second birth certificate was issued, which reflected that the plaintiff was a member of the Indian race.
In 1963, another birth certificate was requested by the plaintiff; however, on this occasion the defendant refused its issuance for the reason that it had been “flagged”, or designated for special treatment, because of certain information in the possession of the defendant.[2]
Briefly, the defendant assumes the position that a birth certificate should not be issued to the plaintiff reflecting his racial designation as an Indian, since the plaintiff’s ancestry reveals discernable traces of Negro blood.
Plaintiff, on the other hand, contends that he is a full blooded Indian. In support thereof he offered his testimony, together with that of his mother, to establish that they were considered to be white by the people who knew them, they had always associated with white people, and they had attended white schools. All documentary evidence was submitted by joint stipulation.
Therefore, the pertinent question posed for our consideration is one of fact, and that is whether the plaintiff is an Indian or a Negro, and therefore entitled to a corresponding racial designation on his birth certificate.
We emphasize at the inception hereof that there is no trace of Negro blood in the plaintiff’s maternal line. All of his maternal ancestors are designated by birth, death or Census records as Indians, with one or two exceptions of white intermarriage therein.
We are not favored, however, with the existence of such pristine simplicity in plaintiff’s paternal line. Two of plaintiff’s great-great-grandparents, Gustave and Celeste Trahant, are designated as white in the Census of 1880. However, one of their children — plaintiff’s great-grandmother, Josephine Trahant Verdin — was designated as mulatto in the same Census.[3] The confusion thus created is further emphasized by the fact that plaintiff’s great-grandfather, Alexander Verdin, the son of two *683 people classed as mulattoes in the 1850, I860, and 1880 Censuses,[4] was registered as an Indian and yet later designated in the 1880 Census as a mulatto.
One of the issue of the marriage between the said Alexander Verdin and Josephine Trahant (two alleged mulattoes) was Eva Verdin, the plaintiffs grandmother. Her registration indicates that her racial background was Indian. However, Eva Ver-din’s brother Joseph was classified as mulatto in the 1880 Census, while the marriage certificate of her brother Albert indicates that he was an Indian.
Eva Verdin married plaintiffs grandfather, Pierre L. Francis, whose zvhite registration was later altered to Indian. Francis’ parents,[5] however, were designated as mulattoes in the Census of 1880, together with his brother, Frank Francis. Another source of confusion is that two of Frank Francis’ children were designated as colored, while the other two were classified as Indians in their birth certificates.
The issue of the marriage of plaintiff’s said grandparents, Pierre Francis and Eva Verdin (both of whom were registered as Indians) were Elizabeth Francis (originally colored hut changed to Indian), Raymond Francis (colored), and Leon Joseph Francis, the plaintiff’s father, who was originally registered as colored but later changed to white by the defendant. This alteration is now contested by the defendant for the reason that it was made in error.
An attempt to generalize reveals that in plaintiff’s direct paternal line we are confronted with the instance of a mulatto as the issue of the marriage of two whites, three cases of Indians as the issue of the marriage of mulattoes,[6] and one instance of a “colored” person as the issue of two-Indians. These numerous inconsistencies-strongly suggest that the words mulatto,. Indian, and colored were in at least some instances confused and incorrectly used by the person or persons responsible for the racial entries made in the public records.
The foregoing conclusion is quite reasonable in view of the confused nomenclature used in Louisiana to designate race. For example, it is judicially well recognized that even the self-designation of a person as “colored” before the Civil War did not necessarily mean that he was a Negro.[7] At that time it was used to designate any non-white, and only since the Civil War has it become synonymous with “Negro”. In this connection, it is of interest to point out that there is at least one reported case in which a Filipino, through ignorance, registered her child as “colored” because he was non-white.[8] Moreover, the inaccuracy of the Census records must also be considered in an effort to justly evaluate a case of this nature. In Soulet v. City of New Orleans,[9] this court recognized that while Census exhibits are to be considered, they are not in themselves conclusive. We reasoned that:
“The Census report is nothing more than a record of information given by the subject interrogated to the Census taker for statistical purposes; the latter is not an investigator, and must accept information as given unless it is obviously, or personally known to him, *684 to be incorrect. The subject being interviewed could be of negro blood, yet look Caucasian. These Census Exhibits are part of the whole picture, but are not conclusive in themselves.”
The evolution of the jurisprudential rationalization relative to the requirements for permitting a change in vital statistics records emanates from the case of Sunseri v. Cassagne,[10] wherein the court on rehearing asserted that a marriage should not be annulled because one of the parties thereto is a Negro “unless the evidence adduced leaves no room for doubt that such is the case.” This language was seized upon in the case of State v. Treadaway,[11] in which it was recognized that vital statistics cannot be changed unless the proof in support of the proposed change leaves “no doubt at all”. On appeal,[12] the Supreme Court affirmed this ruling and added that the legal certainty of the proof necessary to effect such a change must be such as to compel the Registrar of Vital Statistics to perform the ministerial duty of changing the records. The organ for the court then went on to say:
“As the name indicates, the records kept by the Registrar are vital to the general public welfare. The registration of a birthright must be given as much sanctity in the law as the registration of a property right.”
The same formula was followed in Green v. City of New Orleans[13] and State ex rel. Lytell v. La. State Board of Health[14] to arrive at the conclusion that the evidence necessary to justify a change in a birth registration must leave no doubt at all.
In applying the foregoing rationale to the facts of this case we are led to the inevitable conclusion that there exists no justification for ordering a change in the plaintiff’s birth certificate in order to designate him as Negro instead of Indian. It is true that a portion of the evidence inscribed in the record tends to indicate that several of the plaintiff’s ancestors were of the Negro race. However, the confusion and contradiction appearing on the very face of the documents, as we have pointed out hereinabove, makes the conclusion self-evident that some of these records are obviously incorrect. Once we acknowledge, as we must, the incorrectness of this aspect of these records, it becomes quite obvious that we cannot order a change in the plaintiff’s racial designation, since we are unable to discern which of these records are incorrect and which are not; therefore, the initial question posed for our consideration is not susceptible of a positive answer in conformity with the requirement of the existing law.
The plaintiff’s present birth registration reveals that he is an Indian. Far from leaving no doubt of their correctness, the records produced as evidence of the plaintiff’s racial lineage reflect nothing concrete. Therefore, since the evidence adduced herein leaves us “doubtful”, the plaintiff’s birth registration must remain as it is, and the defendant must accordingly issue plaintiff’s birth certificate with the racial designation appearing therein of Indian.
For the foregoing reasons, the judgment of the lower court is affirmed. All costs incurred herein are to be paid by the defendant.
Affirmed.

. Suit was also brought against present defendant and the Bureau of Vital Statistics of the City of New Orleans, seeking the change of the birth and death certificates of certain relatives from Negro to Indian.
At the trial, however, plaintiff abandoned his request for the change of his relatives’ certificates, and dismissed the City of New Orleans as a party defendant.

. This procedure is explained in a summary of the testimony given by Mrs. Naomi Drake and Anthony Ciaccio, Registrars of the New Orleans and Louisiana Vital Statistics in the case of State ex rel. Soulet v. City of New Orleans, 94 So.2d 108 (La.App.1957).

.Their other child — plaintiff’s great-great-unde, Francoise Trahant — was registered as coloreé.

. Alexander Verdin’s parents were Joan Verdin and Arsene Gregiore.

. The plaintiff’s great-grandparents.

. Alexander Verdin, it will be remembered, is classed alternately as mulatto and Indian.

.The self-designation is a notarial act as a “free woman of color” was held persuasive but not eonelusive in Sunseri v. Cassagne, 191 La. 209, 185 So. 1 (1938).

. Villa v. Lacoste, 213 La. 654, 35 So.2d 419 (1948).

. Soulet v. City of New Orleans, 94 So.2d 108 (La.App.1957).

. Sunseri v. Cassagne, 195 La. 19, 196 So. 7 (1940).

. State ex rel. Treadaway v. La. State Board of Health, 56 So.2d 249 (La.App.1952). The original opinion in this case is reported at 54 So.2d 343 (La.App.1951).

. State ex rel. Treadaway v. Louisiana State Board of Health, 221 La. 1048, 61 So.2d 735 (1952).

. Green v. City of New Orleans, 88 So.2d 76 (La.App.1956).

. State ex rel. Lytell v. La. State Board of Health, 153 So.2d 498 (La.App.1963).