231 So.2d 730 (1970)
STATE ex rel. Joseph Jules SCHLUMBRECHT, Jr., Individually and as the Administrator of the Estate of his Minor Daughter, Gwendolyn Ann Schlumbrecht
v.
LOUISIANA STATE BOARD OF HEALTH, Through Its President, Dr. T. N. Armistead.
No. 3520.
Court of Appeal of Louisiana, Fourth Circuit.
February 2, 1970.
Rehearing Denied March 9, 1970.
*731 Zelden & Zelden, Robert E. Redmann, New Orleans, for plaintiff-appellant.
James P. Screen, New Orleans, for defendant-appellee.
Before REGAN, CHASEZ and BARNETTE, JJ.
REGAN, Judge.
The plaintiff, Joseph Jules Schlumbrecht, Jr., individually and as administrator of the estate of his minor daughter, Gwendolyn Ann Schlumbrecht, filed this suit against the defendant, the Louisiana State Board of Health through its president endeavoring to obtain a writ of mandamus ordering the defendant to issue a certified copy of the birth certificate of his daughter.
The defendants answered and conceded that the certificate was being legally withheld because of the existence of evidence rendering it necessary to determine the race of Gwendolyn Ann Schlumbrecht by judicial process, and it, therefore, requested that this suit be dismissed.
From a judgment in favor of the defendant dismissing the plaintiff's writ of mandamus, he has prosecuted this appeal.
The record discloses that the plaintiff requested the issuance of the birth certificate of his daughter, Gwendolyn Ann Schlumbrecht, from the Louisiana State Board of Health in the City of New Orleans, which was refused for the reason that it had been "flagged" since certain relevant information was in the possession of the defendant creating a doubt as to the correctness of her racial designation as "white". The defendant then explained that it was, therefore, justified in withholding issuance of a copy of the certificate until such time as an in depth investigation was made and the race judicially determined.
The plaintiff, on the other hand, simply insists that Gwendolyn Ann is entitled to a certified copy of her certificate of birth in conformity with the rationale emanating from La.R.S. 40:156 which reads:
"Subject to the provisions of R.S. 40:158, the state registrar shall, upon request, furnish to any applicant a certified copy of any original certificate, or any part thereof, filed in his office or shall permit its inspection.
"Subject to the provisions of R.S. 40:158, the local registrar for the parish of Orleans or his deputy shall, upon request, furnish to any applicant a certified copy of any birth, death, or marriage certificate filed in his office, or a transcript of any record obtained under the provisions of R.S. 40:260, or shall permit its inspection."
The only significant question posed for our consideration is one of fact, and that is whether sufficient evidence has been adduced herein to determine beyond any doubt the existence of an error in the certificate *732 and whether the State Department of Health is justified in refusing to issue a copy of the certificate with the race designated therein as "white".
The defendant does not contend that there is any trace of Negro or colored blood in the paternal line of Gwendolyn Ann. However, in the maternal line, we are confronted with numerous instances in which ancestors are designated as "white", "free persons of color", others as "mulattos", and still others as "colored". In some instances, children born of the same parents do not all have the same racial designation. These numerous inconsistencies suggest that the words "mulatto", "free persons of color" and "colored" were in at least some instances incorrectly used by the person or persons resonsible for the racial entries made in the public records.
The foregoing observation is quite reasonable in view of the confused nomenclature used in Louisiana to designate race. To illustrate, it has been judicially recognized that even the self-designation of a person as "colored" before the Civil War did not necessarily mean that he was a Negro.[1] At that time, it was used to designate any nonwhite, and only since the Civil War has it become synonymous with "Negro". In this connection, it is of interest to point out that there is at least one reported case in which a Filipino, through ignorance, registered her child as "colored" because he was nonwhite.[2] Additionally, the inaccuracy of the census records must be considered in an effort to justly evaluate a case of this nature. In State ex rel. Soulet v. City of New Orleans,[3] this court recognized that while census exhibits are to be considered as part of the whole picture, they are not in themselves conclusive.
The evolution of the jurisprudential rationalization relative to the requirements for permitting a change in vital statistics records emanates from the case of Sunseri v. Cassagne,[4] wherein the organ for the court on rehearing asserted that a marriage should not be annulled because one of the parties thereto is a Negro unless the evidence adduced leaves "no room for doubt" that such is the case. This rule of law, in conformity with the rationale of the doctrine of stare decisis, has been followed in many subsequent cases including State ex rel. Treadaway v. Louisiana State Board of Health[5] wherein we recognized that vital statistics cannot be changed unless the proof and support thereof leaves "no doubt at all," and on appeal,[6] the Supreme Court affirmed this ruling and added that the legal certainty of the proof necessary to effect a change must be such as to compel the registrar of vital statistics to perform the ministerial duty of changing the records. In that case, the organ for the Supreme Court pointed out that records kept by the registrar are vital to the general public welfare, and the registration of a birth right must be given as much sanctity in the law as the registration of a property right. In Green v. City of New Orleans,[7] State ex rel. Lytell v. Louisiana State Board of Health,[8] State ex rel. Francis v. Louisiana State Board of Health,[9] and State ex rel. Pritchard v. Louisiana State Board of Health,[10] the court followed the foregoing rule of law and further crystallized our jurisprudence to the effect that in order to justify a change in birth registration, the evidence must leave "no doubt at all".
*733 In applying the foreging rationale to the facts of this case, we are lead to the inevitable conclusion that there exists no legal justification for ordering a change in the plaintiff's birth certificate to designate her as a member of a race other than white. It is quite true that some of the evidence inscribed in the record tends to indicate that several of the plaintiff's ancestors were "colored" or "mulatto"; however, the confusion and contradiction appear on the very face of the documents makes the conclusion self-evident that some of these records are obviously incorrect. To reiterate, there is confusion in the law as to the correct definition of "colored" and "mulatto" which lends additional difficulty in determining the exact race of the individuals so designated. Once we acknowledge, as we must, the incorrectness of these records, it becomes obvious that we cannot order a change in the plaintiff's racial designation since we are unable to discern which of these records are incorrect and which are not. Therefore, the initial question posed hereinabove for our consideration is not susceptible of a positive answer in conformity with the requirements of the existing jurisprudence.
The plaintiff's birth certificate discloses that she is "white". Far from leaving no doubt of their correctness, the records produced as evidence of the plaintiff's racial lineage reflects nothing concrete. Therefore since the evidence adduced herein leaves us "doubtful", the plaintiff's birth registration must remain as it is and the defendant must accordingly issue her birth certificate with the racial designation appearing therein of "white".
For the foregoing reasons, the judgment of the lower court is reversed.
All costs incurred herein are to be paid by the defendant.
Reversed.
NOTES
[1] The self-designation in a notarial act as a "free woman of color" was held persuasive but not conclusive in Sunseri v. Cassagne, 191 La. 209, 185 So. 1 (1938).
[2] Villa v. Lacoste, 213 La. 654, 35 So. 2d 419 (1948).
[3] 94 So.2d 108 (La.App., 1957).
[4] 195 La. 19, 196 So. 7 (1940).
[5] 56 So.2d 249 (La.App., 1952).
[6] State ex rel. Treadaway v. Louisiana State Board of Health, 221 La. 1048, 61 So.2d 735 (1952).
[7] 88 So.2d 76 (La.App., 1956).
[8] 153 So.2d 498 (La.App., 1963).
[9] 179 So.2d 681 (La.App., 1965).
[10] 198 So.2d 490 (La.App., 1967).