296 So.2d 809 (1974)
STATE of Louisiana ex rel. Frank PLAIA
v.
LOUISIANA STATE BOARD OF HEALTH.
No. 54269.
Supreme Court of Louisiana.
June 10, 1974.
William J. Guste, Jr., Atty. Gen., Warren E. Mouledoux, First Asst. Atty. Gen., Paul J. Ferlita, Asst. Atty. Gen., for defendant-appellant.
James P. Screen, New Orleans, for La. Bd. of Health, defendant-appellee.
Harry A. Burglass, Metairie, for plaintiff-appellant.
DIXON, Justice.
In litigation commenced in June of 1971, the Louisiana Board of Health was ordered to issue a birth certificate to Elizabeth Maria Plaia designating her race as "white." State ex rel. Plaia v. Louisiana State Board of Health, La.App., 275 So.2d 201 (1973). Subsequently, alleging that only a "short form" birth registration card *810 had been issued instead of a regular birth certificate, Plaia sought to compel compliance with the judgment of the Court of Appeal. In answer to the rule, defendant argues that it is obligated to enforce Act 46 of 1970 (R.S. 42:267) until it is declared unconstitutional, and that its compliance be adjudged sufficient. Plaintiff then filed a supplemental petition asking that Act 46 of 1970 be declared unconstitutional because it provided no definitions for the terms used in the statute, and because it was unconstitutionally discriminatory because it referred only to persons of Negro blood.
The statute involved states:
"In signifying race, a person having one-thirty second or less of Negro blood shall not be deemed, described or designated by any public official in the state of Louisiana as `colored,' a `mulatto,' a `black,' a `negro,' a `griffe,' an `Afro-American,' a `quardroon,' a `mestizo,' a `colored person' or a `person of color.'"
In brief and argument before us the defendant board agrees with the plaintiff that the statute is unconstitutional. The attorney general, however, argues that the statute is constitutional, in that there are legitimate governmental reasons for racial classification, and that the statute can be administered.
None of the parties before us take the position that there is no legitimate governmental interest in racial designation on birth certificates. That question is not before us. We are only required to decide whether R.S. 42:267 is so vague that it cannot be administered, or whether it is null because of invidious racial discrimination.
It is neither.
The act prohibits "any public official" from describing or designating any person as a Negro (or as any of the listed terms sometimes used to refer to persons of Negro blood) unless that person has more than one-thirty-second of Negro blood. The act is clear and simple. It does not require the racial designation of any person. "In signifying race, a person having one-thirty second (sic) or less of Negro blood shall not be deemed, described or designated by any public official in the state of Louisiana as `colored' . . ."
A reasonable explanation of the legislative purpose of the act is that it was a definition, not of the terms indicated in the title, but of the phrase "traceable amount," formerly of legal significance in racial designation in this State. Sunseri v. Cassagne, 195 La. 19, 196 So. 7 (1940). Louisiana is now prohibited, by R.S. 42:267, from designating as "Negro" those persons with only a "traceable amount" of Negro blood.
The district judge was persuaded by opinions of the Court of Appeal which found that terms used in the act (colored, mulatto, black, griffe, Afro-American, etc.) were vague and not sufficiently defined. State, ex rel. Plaia, supra; Thomas v. Louisiana State Board of Health, La.App. 278 So.2d 915 (1973). In those cases the court assumed, as does the defendant, that the defendant is required to take some action in racial designation based on the terms used in the act. That assumption is unwarranted. The act merely prohibits the use of such racial terms unless the person described has more than one-thirty-second Negro blood.
R.S. 40:242-40:245 govern the registration of child births in Orleans Parish. The physician, midwife or parent is required to file the certificate with the local registrar. R.S. 40:243. The required information to be shown on this certificate is detailed in R.S. 40:244. Certificates on file may not be altered except on receipt of acceptable evidence, pursuant to regulations of the board. R.S. 40:266, 40:322. In order to justify a change in birth registration, the evidence must leave no room for doubt. State, ex rel. Schlumbrecht v. Louisiana State Board of Health, La.App., *811 231 So.2d 730 (1970). Except as provided in R.S. 40:158, the registrar "shall, upon request, furnish to any applicant a certified copy of any birth . . . certificate filed in his office . . ." R.S. 40:156.
The judgment of the district court is affirmed in part and reversed in part. That part of the judgment holding Act 46 of 1970 unconstitutional is reversed. That part of the judgment ordering the Louisiana State Board of Health, through the local registrar for the Parish of Orleans, to issue a certified copy of the certificate of live birth of Elizabeth Maria Plaia, born March 10, 1965 at Ochsner Foundation Hospital to Grace Lucille Raphiel, wife of Frank Joseph Plaia, Jr., is affirmed.
BARHAM, J., dissents for reasons assigned.
BARHAM, Justice (dissenting).
I am of the opinion that the majority errs in holding La.R.S. 42:267 constitutional. While this statute fixes an inflexible mathematical test, no legislative attempt has been made to establish how the test is to be met, the burden of proof to be applied, or the type of evidence needed to establish the required percentage of racial ancestry. The problems of the statute in this regard were amply discussed in the appellate decision in this case on the merits. 275 So.2d 201, 203 (La.App. 4th Cir. 1973).
"The Act does not purport to provide the Registrar with any guide as to his mode of computation or as to the meaning of words in the Act and may be considered quite vague in this regard. The Registrar's problem is, therefore, two-fold. First of all, he must undertake to produce a mathematical result by using an equation consisting of many unknown, namely, the terms used on old documents in his possession classifying the ancestors of the child as "colored," "mulatto," "French," "mixed race," "brown," which terms are uncertain insofar as they call for any specific fractions of Negro blood in the individuals so designated. The other part of the Registrar's problem is that as he tries to prove what each of these various terms means in terms of percentage of Negro blood he is operating within the stringent framework of the Schlumbrecht burden of proof."
The enforceability of the act and the problems thereunder were also considered in Thomas v. Louisiana State Board of Health, 278 So.2d 915 (La.App. 4th Cir. 1973) and Messina v. Ciaccio, Director of the Bureau of Vital Statistics, Louisiana State Health Department, 290 So.2d 339 (La.App. 4th Cir. 1974).
The act is drawn as unworkable and unenforceable. If enforceability were the only question, I might agree with the majority's declaration of constitutionality, since the statute does not require anyone to do anything, but merely prohibits certain action. However, the administrative regulations[1] promulgated to enforce this *812 act do require positive action that leads to a denial of equal protection of the law.
The act only applies to one race, the Negro race. Classifications based upon race are inherently suspect and must therefore be subjected to close judicial scrutiny under the equal protection clause of the United States Constitution.[2] The State must show a compelling interest in the statute in order for it to be sustained. Though the State may have a valid interest in ascertaining the race of its citizens for census, voting, educational and other purposes, nonetheless the act in question only applies to the Negro race. No comparable statutes exist for the Caucasian and Mongoloid races. No regulations have been adopted pertaining to those two races requiring the registrar to make an examination of their ancestry. The registrar has the power to withhold or change the birth certificate of anyone having a traceable amount of Negro blood. Citizens of other races do not have to endure this administrative procedure.
If the State desires to require that race be established to a certainty by a mathematical formula, it may do so. However, I believe that it must produce a formula for all three races. It cannot, without logic or reason, discriminately choose to apply a strict formula to only one race. I believe it is the legislature's responsibility to produce a formula that may be equally applied to Negro, Caucasian and Mongoloid races if they wish to have preciseness of race determined objectively. Any formula which is discriminatory in determining the race for the purpose of a birth certificate is in contravention of the Fourteenth *813 Amendment to the United States Constitution. The jurisprudential "traceable amount" formula applied only to the Negro race is equally as repugnant as is the act which we consider.
It is my opinion that La.R.S. 42:267 is unconstitutional and violative of the Fourteenth Amendment to the United States Constitution and the Constitution of the State of Louisiana because it denies the petitioner, and each person so situated, equal protection of the law.
For the foregoing reasons, I respectfully dissent.
NOTES
[1] STATE BOARD OF HEALTH
Bureau of Vital Statistics Regulations for Enforcement of Act 46 of 1970
"The following Rules and Regulations for the administration of the State Vital Statistics Act were adopted, after due notice and publication of intent, at a meeting of the Louisiana State Board of Health at New Orleans, Louisiana, on Saturday, October 17, 1970, adjourned to January 30, 1971, at which final adoption was voted, both of which meetings were convened at 10 A.M. at Room No. 513, Louisiana State Office Building, 325 Loyola Avenue, New Orleans, Louisiana, at which a quorum was present.
"These regulations supplement and amend those adopted by the Board on October 8, 1947 and July 29, 1966 for the efficient administration of the State Vital Statistics Act, and in order to implement the provisions of Act 46 of 1970, all in accordance with the provisions and authority of R.S. 40:143; which regulations were adopted under procedures of the Louisiana Administrative Procedure Act, R.S. 49:951, et seq.
"1. The State Registrar shall strictly enforce the following rules and regulations throughout the State of Louisiana with respect to all certificates of birth and death filed, or which shall be filed, in his office, in the office of any deputy registrar, and in the office of the Registrar of Vital Statistics of the City of New Orleans.
"2. On the face of each and every certificate of any registrant having a traceable amount of Negro blood, according to available evidence, the State Registrar shall stamp, with a rubber stamp, in red ink, beneath or adjacent to the confidential section of said certificate in bold letters the words: `Do Not Issue Any Copy Until Cleared Under Act 46 of 1970 by State Registrar.'
"3. When a copy of said certificate is applied for it shall be checked against the evidence in the possession of the State Registrar, or which has been submitted to him, to determine if said evidence is applicable to the registrant or his ancestors.
"4. If said evidence is not applicable it shall be so noted in the confidential section by the State Registrar in red ink and dated and signed with his original signature and no restrictions shall thereafter be applicable to said certificate unless newly discovered evidence is produced.
"5. If, after checking, said evidence appears to be applicable to the registrant, he, or his next of kin in case of death, shall be notified directly, or through his parents if a minor, and notified of a date and time to examine said findings in the office of the State Registrar.
"6. If the registrant or his representative does not examine said findings on the date fixed, or does not dispute or contest them in a court proceeding within 30 days thereafter, the State Registrar shall correct said certificate in accordance with said evidence, and Board regulations, and issue a copy (or copies) of the certificate.
"7. If said certificate qualifies for clearance under Act 46 of 1970 the State Registrar shall, with red ink and rubber stamp, place next to the registrant's name the inscription, `White', or `Indian', as the case may be.
"8. If the parents of said registrant as shown on said certificate qualify for clearance under Act 46 of 1970, each shall be indicated as above. If one of the two parents' genealogy is unquestioned it shall be indicated, as filed, or as properly corrected.
"9. If either or both parents do not qualify for clearance under Act 46 of 1970, in accordance with the evidence available, there shall be stamped in red ink on said original certificate opposite the race of the parent or parents the words, `In question.' This may only be deleted by a judgment of court.
"10. If an applicant who is affected by Act 46 of 1970, or his representative, makes application for a certified copy of a birth certificate or death certificate, he may, at his option, receive a short form Birth Registration Card or Death Registration Card which shall contain all pertinent facts contained on the original long form except the names of parents and facts concerning them."
[2] See Loving v. Virginia, 388 U.S. 1, 11, 87 S.Ct. 1817, 1823, 18 L.Ed.2d 1010 (1967); McLaughlin v. Florida, 379 U.S. 184, 191-192, 85 S.Ct. 283, 287-288, 13 L.Ed.2d 222 (1961); Bolling v. Sharpe, 347 U.S. 497, 499, 74 S.Ct. 693, 694, 98 L.Ed. 884 (1954).